1

2

3

4

5              UNITED STATES DISTRICT COURT

6                    DISTRICT OF NEVADA

7                          * * *
                                    )
8   LAND AMERICA LAWYERS TITLE,      )
                                    )
9              Plaintiff,            )
                                    )
10  v.                              )
                                    )
11  METROPOLITAN LAND               )
    DEVELOPMENT, LLC and RUSHTON    )
12  DEVELOPMENT GROUP, LLC,         )
                                    )
13             Defendants.          )
    _____)
14                                  )
    METROPOLITAN LAND               )
15  DEVELOPMENT, LLC,               )
                                    )          2:05-CV-1388-PMP-PAL
16             Cross-Claimant,       )
                                    )          **ORDER**
17  v.                              )
                                    )
18  RUSHTON DEVELOPMENT GROUP,      )
    LLC,                            )
19                                  )
               Cross-Defendant.      )
20                                  )
    _____)
21                                  )
    METROPOLITAN LAND               )
22  DEVELOPMENT, LLC,               )
                                    )
23             Third-Party Plaintiff,)
                                    )
24  v.                              )
                                    )
25  GLEN RUSHTON and DOMENICO       )
    RABUFFO,                        )
26                                  )
               Third-Party Defendants.)
    _____)

Presently before this Court is Rushton Development Group, LLC's Motion for Summary Judgment on Plaintiff's Complaint for Interpleader (Doc. #16), filed on February 21, 2006.  Also before this Court is Rushton Development Group, LLC ("Rushton Development"), Glenn Rushton ("Rushton"), and Domenico Rabuffo's ("Rabuffo") Motion to Dismiss Cross-claim and Third-party Complaint; Memorandum of Points and Authorities in Support Thereof (Doc. #17), filed on February 21, 2006.  Cross-claimant Metropolitan Land Development ("Metropolitan") filed an Opposition and Counter-Motion for Partial Summary Judgment (Doc. #20) on March 10, 2006.  Defendants Rushton Development, Rushton, and Rabuffo filed a Reply (Doc. #21) on March 20, 2006.  On March 27, 2006, Rushton Development Group, Glenn Rushton, and Domenic Rabuffo filed an Opposition to Counter-Motion for Partial Summary Judgment; Memorandum of Points and Authorities in Support Thereof; Countermotion for Federal Rules of Civil Procedure 56(f) Discovery (Doc. #22).  Metropolitan filed a Reply in Support of Countermotion for Partial Summary Judgment (Doc. #24) on April 10, 2006.

Also before this Court is Metropolitan's Motion for Summary Judgment; Memorandum of Points and Authorities in Support Thereof (Doc. #26), filed on June 2, 2006.  Rushton Development, Rushton, and Rabuffo filed an Opposition (Doc. #34) on June 27, 2006.  Metropolitan filed a Reply (Doc. #37) on July 10, 2006.  On July 20, 2006, a hearing was conducted regarding the foregoing Motions.

## I.        BACKGROUND

This case arises out of a dispute over a parcel of land on Las Vegas Boulevard in Las Vegas, Nevada.  On August 24, 2005, Metropolitan and Rushton Development entered into an agreement for the purchase and sale of the property commonly known as 4915 S. Las Vegas Boulevard, Las Vegas, Nevada ("the Property").  (Compl. at 2.)  Since August 24, 2005, Plaintiff Land America Lawyers Title ("Land America") has been acting as escrow agent in the real property transaction between Metropolitan and Rushton

Development.  (Id.)  Under the terms of the Purchase Agreement ("Agreement"), Rushton

Development deposited with Land America  earnest money to be held in escrow and to be

applied to the purchase price upon close of escrow.  (Id.)

> The Agreement between Rushton Development and Metropolitan provided:
> Within two (2) business days following the Execution Date, Purchaser
> shall deliver in escrow . . . an earnest money deposit in the amount of
> FIVE HUNDRED THOUSAND AND NO/100 DOLLARS
> ($500,000.00) (the "Initial Deposit").  Provided that this Agreement is
> not terminated pursuant to the terms of Section 6.2 of this Agreement,
> Purchaser shall make an additional deposit into escrow (in the same
> amount described above) in the amount of FIVE HUNDRED
> THOUSAND AND NO/100 DOLLARS ($500,000.00) (the
> "Additional Deposit") on or before the expiration of the Inspection
> Period. . . .  Subject to the satisfaction of all the provisions of Sections
> 9.1 and 9.2 below on the Closing Date, the deposit shall be disbursed
> by Escrow Agent to Seller. . . .  The Deposit shall be fully refundable
> to Purchaser through the Inspection Period . . . or in the event of a
> default by Seller under this Agreement.  If after the Inspection Period,
> Purchaser elects to proceed with the transaction, then, except as
> otherwise provided by this Agreement, the Deposit shall become non-
> refundable and applied in full to the Purchase Price at closing,
> provided, however, that the Deposit shall be fully refundable to
> Purchaser in the event of a default by Seller under this Agreement.

(Ex. to Answer to Compl. [Doc. #5], Ex. A at 2.)  The "Inspection Period," as defined by

the Agreement, started on August 24, 2005, and ended thirty days thereafter.  (Id. at 3.)

Under the Agreement, the Purchaser could waive the inspection period:

> Notwithstanding anything to the contrary in this Agreement (i) if
> Purchaser has not provided notice to Seller on or before the expiration
> of the Inspection Period that Purchaser's Inspection Contingency has
> been satisfied or waived (Purchaser shall have the right to elect not to
> give such notice for any reason or for no reason) or (ii) if Purchaser
> gives notice to Seller on or before the expiration of the Inspection
> Period that Purchaser's Inspection Contingency has not been satisfied
> or waived (which notice may be given by Purchaser, if it so elects to do
> so, for any reason or for no reason) then, in either instance described in
> preceding clause (i) and clause (ii), (a) this Agreement shall be deemed
> terminated and shall be null and void and no further force and effect
> . . . (b) Escrow Agent shall deliver the Deposit to Purchaser, and (c)
> the parties shall have no further obligations or liability under this
> Agreement, except those liabilities and obligations of Seller and
> Purchaser hereunder which expressly survive termination of this
> Agreement. . . .  If Purchaser provides notice to Seller on or before the
> expiration of the Inspection Period that Purchaser's Inspection

3

Contingency has been satisfied or waived, this Agreement shall remain in full force and effect.

(Id. at 4.)  In the event that the Purchaser defaults,

> [T]hen the Deposit, together with accrued interest thereon, shall be delivered by Escrow Agent to Seller, as liquidated damages and this Agreement, and all further liabilities and obligations of the parties hereunder, shall terminate (other than liabilities and obligations which are expressly provided herein as surviving termination).  The parties recognize that in view of the fluctuating real estate market in the County, it is impossible to ascertain in advance the damages which Seller is likely to suffer in the event of a default by Purchaser. Accordingly, the parties have agreed that the amount of the Deposit (less any amounts expected pursuant to Section 7.3) has been arrived at by Purchaser and Seller in good faith and in an effort to establish agreed upon and liquidated damages which Seller will suffer in the event of default by Purchaser hereunder.  Other than receipt of the remaining Deposit, Seller shall not be entitled to maintain any action for damages, and shall not have or pursue any other remedy in the event of Purchaser's default.  Nothing in the foregoing is intended to limit the obligations of Purchaser or the remedies of Seller available at law and in equity with respect to a breach or default by Purchaser of any such obligation to the extent that this Agreement specifically provides that such obligation shall survive Closing or the termination of this Agreement.

(Id. at 11-12.)

The Agreement further provides for attorney's fees in the event of controversy:

> In the event of any controversy, claim or dispute between the parties hereto relating to the subject matter of this Agreement, the prevailing party shall be entitled to recover from the nonprevailing party all of its reasonable expenses, including, but not limited to, reasonable attorneys' fees (including such fees incurred in connection with appellate proceedings).  The provisions of this Section 14.9 shall survive Closing or termination of this Agreement.

(Id. at 15.)

As of September 23, 2005, the property had not transferred from Metropolitan to Rushton Development.  As the Agreement was due to expire, Metropolitan, Rushton Development, Rushton, and Rabuffo entered in to a First Amendment ("Amendment") to the Agreement.  (Ex. to Answer to Compl, Ex. C.)  The purpose of the Amendment was to "revive, reinstate and reaffirm the Purchase Agreement . . . ."  (Id.)

The Amendment provides for two promissory notes, one for $975,000 and a non-negotiable one for twenty-five thousand dollars provided:

> [T]hat upon the occurrence of a Material Title Objection on or before September 28, 2005, the Purchase Agreement shall be deemed terminated and of no further force or effect and the Promissory Note (together with any interest accruing thereon) shall be deemed paid and satisfied in full; provided, further, that notwithstanding the foregoing and as additional consideration for Seller to enter into this Amendment and reinstate the Purchase Agreement, the Non-Negotiable Note shall be due and payable pursuant to the terms thereof notwithstanding the occurrence of a Material Title Objection or the termination of the Purchase Agreement for any reason. The Parties agree that the principal amount of the Non-Negotiable Note shall be deemed to be earned by Seller upon delivery.

(Id. at 2.)

Under the Amendment, the Purchaser also agrees that "(I) except for the occurrence of a Material Title Objection, the Inspection Period has expired and Purchaser's Inspection Contingencies have been satisfied or waived; and (ii) except for the satisfaction of the Surviving Contingencies (as defined below), all of the Purchasers' conditions precedent to the closing have been waived." (Id.) A "Material Title Objection" is defined as a defect in Seller's title to the Property. . . . " (Id.) "Surviving Contingencies" refer to "the inability of Seller to deliver insurable title to the Property at the Closing and the inability of Seller to deliver an executed Perpetual Avignation and Clearance Easement and the Director's Permit related thereto." (Id.)

Per the Amendment, the deal was to close on October 24, 2005. (Id.) If the closing did not occur by that date, the Amendment provides:

> Notwithstanding anything contained in this Amendment or the Purchase Agreement to the contrary, if either of: (i) the amounts due under the Notes are not paid to Seller on or before the Maturity Date; or (ii) the transactions contemplated by the Purchase Agreement have not closed on or before the Closing Date: (x) the Purchase Agreement shall immediately terminate and be of no further force or effect; (y) the Purchaser shall be deemed to have waived any and all claim to or

> rights in the Property or any interest therein; and (z) Seller shall be relieved of any and all obligation or liability under the Purchase Agreement.

(Id.)  The promissory note for the $975,000 provides:

> If an Event of Default shall occur:  (i) the outstanding Principal Amount shall be immediately due and payable; (ii) Maker shall be deemed to have waived any and all claim to any interest in the Property; (ii [sic]) the Purchase Agreement shall immediately terminate and be of no further force or effect; and (iii) Payee shall have no further obligation or liability to Maker under the Purchase Agreement.

(Id.)   On September 30, 2005, Rushton Development wired into escrow one million dollars. (Answer to Compl. at 8.)  On October 5, 2005, Metropolitan demanded Land America release $25,000 pursuant to the Amendment.  (Id.)  In response, Rushton instructed Land America to release the $25,000 to Metropolitan.  (Id.)  On October 20, 2005, Metropolitan informed Rushton Development of its "readiness, willingness, and ability to close escrow on October 24, 2005."  (Id.)  Escrow on the property did not close on Monday, October 24, 2005 and has not closed since.  (Id.)

The weekend before the closing date, Hurricane Wilma struck south Florida.  As a result, Rushton Development, Rushton, and Rabuffo assert they could not communicate with their lenders or legal counsel.  (Rushton Dev. Group, Glenn Rushton & Domenico Rabuffo's Opp'n to Counter-Mot. for Partial Summ. J.; Mem. of P. & A. in Supp. thereof; Counter-mot. for Fed. R. Civ. P. 56(f) Disc.; Aff. of Domenic Rabuffo; Aff. of Anthony Medina; Aff. of John Benedict, Esq. ["Rushton Mot. Partial Summ. J."], Ex. C at 1.)  Rushton contends that for one week following Hurricane Wilma, communication with Florida was "nonexistent or sparse."  (Rushton Mot. Partial Summ. J., Aff. of Domenico Rabuffo.)

Rushton further argues that prior to Hurricane Wilma and the passing of the closing date of October 24, 2005, the parties were informed that the land would not appraise at $65,000,000, the agreed upon sales price, but instead would appraise at $50,000,000.  (Id.

at 1-2.)  Rabuffo states there also was an issue with engineers who said that they would not be able to complete the structure as planned, and that they would need an additional two to three million dollars to complete the project on the Property.  (Id. at 4.)  As a result, Rabuffo states in sworn affidavit that prior to October 24, 2005, Anthony Medina ("Medina"), acting as liaison between purchaser and seller, and another witness met with Todd Roth ("Roth"), representing Metropolitan, and began renegotiations for the purchase price of the Property.  (Id. at 2.)  Rabuffo and Medina state Roth agreed to renegotiate the price to $50,000,000, and that as a result of the renegotiated price, Roth would receive fifteen percent ownership in the deal.  (Rushton Mot. Partial Summ. J., Aff. of Domenico Rabuffo at 2, Aff. of Anthony Medina at 2-3.)  Rabuffo states "[i]n this context, (both the need to renegotiate and the hurricane), the contractual closing date of October 24th came and went."  (Id.)  Rabuffo further states in his affidavit that Metropolitan did not claim breach of contract on October 24th because the parties were renegotiating the deal.  (Id.)  Medina also states that, subsequent to the new agreement, Roth informed him that he had telephoned his counsel and that a new agreement was being drafted.  (Id.)

Rabuffo avers in affidavit that on October 26, 2005, he and Roth tentatively began discussions regarding an extension to the Agreement.  (Rushton Mot. For Partial Summ. J., Ex. C at 2.)  Under the revised Agreement, Rabuffo states $500,000 of the escrow money immediately would become non-refundable, and the remaining $475,000 would become non-refundable on November 11, 2005.  (Id.)  Furthermore, Rabuffo states that he and Roth agreed to a thirty-day extension of escrow.  (Id.)

On October 27, 2005, Jane Grey ("Grey") of Lawyers Title of Nevada, Inc. wrote an email to Roth and Medina with an attachment of "the instruction to release $500,000.00 today to Metropolitan Land.  The instruction to release $475,000.00 on November 11th will be coming shortly under separate cover."  (Rushton Mot. for Partial Summ. J., Ex. A.)  On October 27, 2006, Lawyers Title created an Instruction to Escrow Release of Funds prior to

Closing/ Recording which states:

> Provided escrow agent is in receipt of signed escrow instructions from all parties and clearance of all funds on deposit, Escrow Agent is hereby directed to immediately release the sum of $500,000.00 to Metropolitan Land Development LLC which funds shall apply toward the total purchase price, regardless of the present condition of the above numbered escrow, the present condition of title and/or the ultimate closing of this escrow.

(Rushton Mot. Partial Summ. J., Ex. B.)  The Instruction further provides:

> In consideration of the foregoing instructions to release funds prior to the close of escrow, the parties to this escrow, by execution of these instructions, do hereby additionally hold Escrow Agent and LAWYERS TITLE OF NEVADA, INC. harmless . . . .

(Id.)  Neither party signed the document.  (Id.)

On October 31, 2005, Metropolitan informed Land America that Rushton Development was in default of the Agreement and demanded release of the earnest money deposit.  (Id. at 9.)  On November 1, 2005, Rushton Development informed Land America that Rushton Development disputed Metropolitan's contention that Rushton Development was in default and demanded the earnest money deposit not be released.  (Id.)  On November 1, 2005, Metropolitan requested Land America to interplead the remainder of the earnest money deposit into "a court of competent jurisdiction."  (Id.)  Rushton Development requested Land America to wait thirty days before interpleading the remainder of the earnest money deposit.  (Id.)

On November 18, 2005, Land America filed suit in this Court in response to the dispute between Metropolitan and Rushton Development.  (Compl.)  With the exception of escrow fees, title fees, attorney's fees, and costs of this suit, Land America has no claim or interest in the funds currently held in escrow.  (Id.)  Land America filed suit in this Court seeking to require the Defendants to interplead in this cause of action and to settle the respective rights to the $975,000 in Land America's possession.  (Id.)  Land America further seeks an Order from this Court authorizing and directing Land America to deposit

with the Clerk of Court the $975,000, less the title fees, escrow fees, attorney's fees, and costs of suit.

On January 13, 2005, Metropolitan filed a cross-claim and third party Complaint in this Court.  Metropolitan seeks declaratory relief under 22 U.S.C. § 2201 (claim 1). Additionally, Metropolitan alleges Rushton Development, Rushton, and Rabuffo are in breach of contract (claim 2) and in breach of the covenant of good faith and fair dealing (claim 3).

Rushton Development now moves the Court to grant summary judgment as to Land America's Complaint for Interpleader.  Rushton Development argues that it is entitled to the $975,000 in escrow and that under the Amendment, Land America immediately should  release those funds to Rushton Development, Rushton, and Rabuffo.  Rushton Development, Rushton, and Rabuffo further move this Court to dismiss Metropolitan's cross-claim and third-party Complaint.  Rushton argues that, under the Agreement, Metropolitan limited itself to the earnest money deposit as a remedy in the event of default. Therefore, Rushton argues the court should dismiss Metropolitan's claims.

Metropolitan responds that the Agreement provided for a cause of action in the event of default, as well as liquidated damages.  Metropolitan further argues the Agreement expressly includes a provision for attorney's fees if litigation over the Agreement is required.  Additionally, Metropolitan moves the court to grant summary judgment as a matter of law with regard to its claim for breach of contract.  Metropolitan argues that under the Agreement and the Amendment, Rushton is in default of the contract as a matter of law. Metropolitan argues that under the Agreement and the Amendment, the earnest money became non-refundable, and only could be refunded to Rushton upon either a material title objection, or default by Metropolitan.  Because neither default nor a material title objection occurred, Metropolitan argues the Agreement provides that the earnest money together with interest accrued is to be delivered to Metropolitan.

1    In response, Rushton Development, Rushton, and Rabuffo argue Metropolitan's

2  motion for summary judgment should be denied for three reasons.  First, they argue that

3  because Metropolitan failed to respond to their Motion for Summary Judgment  regarding

4  Land America's Complaint (Doc. #16-1), this Court should grant summary judgment in

5  favor of Rushton Group, Rushton, and Rabuffo and deny Metropolitan's motion for

6  summary judgment under Local Rule 7-2.  Second, Rushton Development, Rushton, and

7  Rabuffo argue that under the Amendment, if escrow does not close, the Agreement

8  terminates and the earnest money deposit is to be returned to Rushton Group.  Third,

9  Rushton Development, Rushton, and Rabuffo argue that there are genuine issues of material

10 fact whether a breach occurred, and that under Nevada law and the principles of equity,

11 Metropolitan is estopped from claiming breach of contract because it induced Rushton

12 Development, Rushton, and Rabuffo to breach the contract.  Finally, Rushton Development,

13 Rushton, and Rabuffo move this Court for relief under Federal Rule of Civil Procedure

14 56(f) to conduct discovery essential to opposing Metropolitan's motion for summary

15 judgment.

16    Finally, Metropolitan moves this Court to grant summary judgment as to all of its

17 cross-claims.  Metropolitan argues that under the $975,000 promissory note it is entitled to

18 the total amount of funds in escrow.  Rushton Development, Rushton, and Rabuffo oppose

19 the motion arguing that based on their other points and authorities, the Court should deny

20 the motion and the Court should grant their motion for continued discovery under Rule

21 56(f).

22 **II.      LEGAL STANDARD**

23    Summary judgment is appropriate if "the pleadings, depositions, answers to

24 interrogatories, and admissions on file, together with the affidavits, if any" demonstrate

25 "there is no genuine issue as to any material fact and . . . the moving party is entitled to a

26 judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law defines which

facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All justifiable inferences must be viewed in the light most favorable to the non-moving party.  County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact.  Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000).  The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.  Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

## III.     DISCUSSION

"It is well settled that a federal court exercising diversity jurisdiction must apply substantive state law."  Am. Triticale, Inc. v. Nytco Serv., Inc., 664 F.2d 1136, 1141 (9th Cir. 1981) (citing Erie R. Co. v. Tompkins, 304 U.S. 64 (1938)).  "Absent a direct conflict between a federal rule and state law, state law applies in diversity actions."  Torre v. Brickey, 278 F.3d 917, 919 (9th Cir. 2002).  Moreover, the decisions of the Nevada State Supreme Court bind this Court when interpreting Nevada state law.  N.L.R.B. v. Calkins, 187 F.3d 1080, 1089 (9th Cir. 1999) (citation omitted).

In Nevada, when interpreting contracts, "[c]ourts are bound by language which is clear and free from ambiguity and cannot, using the guise of interpretation, distort the plain meaning of an agreement."  Watson v. Watson, 596 P.2d 507, 508 (Nev. 1979).  Where a contract is ambiguous, the Court must seek a reasonable interpretation.  Caldwell v. Consol. Realty & Mgmt. Co., 668 P.2d 284, 287 (Nev. 1983).  "'A contract is ambiguous if it is reasonably susceptible to more than one interpretation.'"  Shelton v. Shelton, 78 P.3d 507, 510 (Nev. 2003) (quoting Margrave v. Dermody Prop., 878 P.2d 291, 293 (1994)).  The Court should not interpret a contract so as to render any provision meaningless, and when at all possible the Court "should give effect to every word in the contract."  Caldwell, 668 P.2d at 287.  "Where . . . a written contract is clear and unambiguous on its face, extraneous

evidence cannot be introduced to explain its meaning." <u>Geo. B. Smith Chem. Works, Inc.</u>
<u>v. Simon</u>, 555 P.2d 216,216-17 (Nev. 1976) (citing <u>Lindley & Co. v. Piggly Wiggly</u>, 39
P.2d 903 (Nev. 1935)).  In contracts where time is of the essence, "if neither party tenders
performance by the date set for closure under a contract that provides time is of the essence,
the duties of both parties are discharged by passage of that date." <u>Goldston v. AMI</u>
<u>Investments, Inc.</u>, 655 P.2d 521, 523 (Nev. 1982) (citing <u>Associated Developers Co. v.</u>
<u>Infanger</u>, 85 Idaho 158, 376 P.2d 496 (1962)).  When breach does occur, the Nevada
Supreme Court has held "that liquidated damages provisions are generally prima facie valid,
and the party challenging the provision must establish that the provision amounts to a
penalty." <u>Mason v. Fakhimi</u>, 865 P.2d 333, 335 (Nev. 1993) (citing <u>Haromy v. Sawyer</u>, 654
P.2d 1022, 1023 (Nev. 1982)).  A liquidated damages provision constitutes a penalty where
the "liquidated damages are disproportionate to the actual damages sustained by the injured
party." <u>Id.</u>

Rushton Development, Rushton, and Rabuffo argue that the Amendment renders
the Agreement invalid upon the passage of the closing date, October 24, 2005.  Rushton
Development, Rushton, and Rabuffo argue that, under the Amendment, should the
transaction not close on or before the closing date the Agreement terminates and Rushton
Development, Rushton, and Rabuffo have no further obligations under the contract.  The
plain language of the Amendment and the Agreement does not support Rushton
Development, Rushton, and Rabuffo's interpretation of the contract.  The Amendment
provides:

> [n]ot withstanding anything contained in this Amendment or the
> Purchase Agreement to the contrary, if either of: (i) the amounts due
> under the Notes are not paid to Seller on or before the Maturity Date;
> or (ii) the transactions contemplated by the Purchase Agreement have
> not closed on or before the Closing Date: (x) the Purchase Agreement
> shall immediately terminate and be of no further force or effect . . . .

(Ex. to Answer to Compl, Ex. C at 2.)  However, the Agreement provides that in the event

of default, then the seller is entitled to the escrow deposit and that

> [n]othing in the foregoing is intended to limit the obligations of
> Purchaser or the remedies of Seller available at law and in equity with
> respect to a breach or default by Purchaser of any such obligation to
> the extent that this Agreement specifically provides that such
> obligation shall survive Closing or the termination of this Agreement.

(Ex. to Answer to Compl., Ex. A at 5.)  Thus, the Agreement's language is clear that the liquidated damages clause was intended to survive termination of the Agreement, and nothing in the Amendment abrogates this language.  The plain language of the Agreement does not support Rushton Development, Rushton, and Rabuffo's interpretation.

Under the Agreement, as amended, Rushton Development, Rushton, and Rabuffo, as purchasers, agreed to "purchase, acquire, and accept" the Property from Metropolitan, as seller, by October 24, 2005.  (Id. at 1; Ex. to Answer to Compl., Ex. C at 2.)  However, the Agreement provides that the occurrence of a material title objection would render the Agreement terminated.  (Ex. to Answer to Compl., Ex. C at 1.)  A material title objection is defined as "a defect in Seller's title to the Property that would prohibit the development of the Intended Improvements or otherwise impair the delivery of insurable title to the Property."  (Id. at 2.)  Absent a material title objection, failure to complete the contract on or before the maturity date constitutes default.  Thereupon, the Agreement provides that seller is entitled to liquidated damages, together with accrued interest, as held by the designated escrow agent, Land America.  (Ex. to Answer to Compl, Ex. A ¶12.1.)  The language of the contract is not susceptible to more than one interpretation and therefore is clear and unambiguous.  See Shelton, 78 P.3d at 510.

Rushton Development, Rushton, and Rabuffo argue substantial questions of material fact exist as to whether they made a material title objection, and therefore summary judgment is not appropriate.  First, Rushton Development, Rushton, and Rabuffo argue that engineering reports indicated that they would not be able to dig far enough into the ground to support the planned condominium project, thereby constituting a material title objection.

Second, Rushton Development, Rushton, and Rabuffo argue the property appraised at a value lower than the previously agreed upon purchase price, thereby constituting a material title objection.

Viewing all evidence in favor of Rushton Development, Rushton, and Rabuffo, the non-moving parties, there is no evidence that Rushton Development, Rushton, and Rabuffo made a material title objection prior to October 24, 2005, thereby terminating the agreement. First, the evidence indicates that an issue arose with regard to the engineering of the project which would require an expenditure of an additional two to three million dollars to complete the structure as planned. (Rushton Mot. for Partial Summ. J., Ex. C at 4.) Although the engineering issue would increase the overall cost of the project, there is no evidence that the issue would prohibit the development of the intended improvements and therefore it does not constitute a material title objection, as defined by the Agreement, as amended. (Ex. to Answer to Compl., Ex. C at 1.) Second, with regard to the decrease in appraisal value of the land, there is no evidence in the record that such a decrease would prohibit the development of the intended improvements and therefore does not constitute a material title objection, as defined by the amended Agreement. (Id.)

Viewing all evidence in favor of Rushton Development, Rushton, and Rabuffo, the non-moving parties, Metropolitan is entitled to the $975,000 in escrow with Land America as liquidated damages under the Agreement. (See Ex. to Answer to Compl., Ex. A at 11-12.) As no material title objection was made thereby terminating the Agreement, Rushton Development, Rushton, and Rabuffo's failure to purchase the property on or before October 24, 2005 constitutes breach of the contract. (Ex. to Answer to Compl., Ex. A at 11 ¶ 12.1.) Therefore under the Agreement, Metropolitan should deliver the money in escrow, together with accrued interest thereon, to the seller of the Property. (Id.) Under the contract, Metropolitan is limited to the liquidated damages contemplated in the liquidated damages clause. (Id. at 11-12.)

1    Rushton Development, Rushton, and Rabuffo further argue Metropolitan is

2 equitably estopped from claiming breach of contract.  Rushton Development, Rushton, and

3 Rabuffo argue Metropolitan intentionally induced Rushton Development, Rushton, and

4 Rabuffo to agree to an escrow extension, and therefore relying on Metropolitan's statements

5 Rushton Development, Rushton, and Rabuffo did not close the deal on October 24, 2005.

6    In Nevada, "[e]quitable estoppel functions to prevent the assertion of legal rights

7 that in equity and good conscience should not be available due to a party's conduct." Topaz

8 Mut. Co., Inc. v. Marsh, 839 P.2d 606, 611 (Nev. 1992) (citing United Bhd. v. Dahnke, 714

9 P.2d 177 (Nev. 1986)).  Thus, a party acting in bad faith and with an intent to defraud, is

10 estopped from challenging the enforceability of a contract.  Id.  The Nevada Supreme

11 Court has held that equitable estoppel generally is comprised of four factors:

12    (1) The party to be estopped must be apprised of the true facts; (2) he
     must intend that his conduct shall be acted upon, or must so act that the
13   party asserting estoppel has the right to believe it was so intended; (3)
     the party asserting the estoppel must be ignorant of the true state of
14   facts; (4) he must have relied to his detriment on the conduct of the
     party to be estopped.

15

16 Mahban v. MGM Grand Hotels, Inc., 691 P.2d 421, 423 (Nev. 1984).

17    Rushton Group cites Goldston v. AMI Investments, Inc., 655 P.2d 521 (Nev.

18 1982), for the principle that where one party creates delay on the part of the other, then it is

19 estopped in equity from claiming default by the party that did not perform.  In Goldston, the

20 Nevada Supreme Court held that if neither party tenders performance, then the duties of

21 both parties are discharged by the passage of the date for closure.  Id. at 523.  However,

22 "where a party is in default of obligations which must be performed prior to the

23 performance by the other party becoming due, the first party is not entitled to claim a

24 \\\

25 \\\

26

15

default by the second." <u>Id.</u>  The Nevada Supreme Court went on to quote Corbin on

contracts:

> Where 'time was of the essence'- that is, where performance by the plaintiff within a specified time was a condition precedent to the defendant's duty to perform his part - if the plaintiff has been caused to delay his performance beyond the specified time by the request or agreement or other conduct of the defendant, the plaintiff can enforce the contract in spite of his delay.  This assumes that the non-performance of the condition was not caused by plaintiff's own inability to perform, and that but for the defendant's request, 'agreement, or other conduct, the plaintiff would have performed the condition. If the defendant later repudiates or otherwise breaks the contract, he cannot use the plaintiff's failure to perform on time as a defense.

<u>Id.</u> (citing 2 Corbin, Corbin on Contracts § 310 at 112 (1950)).  In <u>Goldston</u>, the closing of

the agreement was conditioned on the seller removing a fence from the property in question,

which he did not do before closing.  <u>Id.</u> at 522-23.  The Court held that the seller's failure to

meet the contract's condition precedent, i.e., the removal of the fence, constituted a

repudiation under the contract, thus the seller was estopped from claiming breach of

contract.  <u>Id.</u> at 523.

      <u>Goldston</u> is not controlling in the present matter.  Unlike the defendant in

<u>Goldston</u>, Rabuffo and Medina claim Metropolitan persuaded Rushton Development,

Rushton, and Rabuffo to not go through with the Agreement on October 24, 2005, not that

Metropolitan did not complete a condition precedent to the agreement, thereby excusing

Rushton Development, Rushton, and Rabuffo's breach.  Thus, neither the facts nor the law

support Rushton Development, Rushton, and Rabuffo's position of equitable estoppel.

      Clearly the transaction did not close on October 24, 2005.  Rushton

Development, Rushton, and Rabuffo argue continued discovery is necessary to investigate

why the deal was not closed by October 24, 2005.  Specifically, they argue that there are

questions of fact regarding the material title objection and the effect of the alleged re-

negotiation of the contract.  The parties remain at odds as to whether Roth, on behalf of

Metropolitan, engaged in re-negotiation of the Agreement prior to October 24, 2005, and whether Rushton Development, Rushton, and Rabuffo relied on Metropolitan's verbal agreement to re-negotiate in failing to close the original Agreement by the October 24, 2005 deadline.  This factual dispute persuades the Court that further consideration of Rushton Development, Rushton, and Rabuffo's Motion for Further Discovery under Rule 56(f) should be granted.

Where parties are unable to present by affidavit facts essential to the opposition of a motion for summary judgment, Federal Rule of Civil Procedure 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).  In the interest of justice, the Court may grant additional time for discovery where the party opposing to a motion for summary judgment has presented by an affidavit compliant with Rule 56(f) that it cannot obtain facts essential to the opposition of the motion.  Id.  However, a party seeking further discovery under 56(f), bears the burden to make clear "what information is sought and how it would preclude summary judgment." Nicholas v. Wallenstein, 266 F.3d 1083, 1088-89 (9th Cir. 2001) (citing Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998)).  As the United States Court of Appeals for the Second Circuit has noted, "[I]t is clear that a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover."  Contemporary Mission v. United States Postal Serv., 649 F.2d 97, 107 (2d Cir. 1981).  "An opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify denial of the motion."  Neely v. St. Paul Fire & Mar. Ins. Co., 584 F.2d 341, 344 (9th Cir. 1978).

The Court will grant Rushton Development, Rushton, and Rabuffo's motion for continued discovery under Rule 56(f).  Rabuffo and Medina state in affidavit that Roth participated in renegotiation of the contract prior to October 24, 2005 and agreed to a new agreement.  (Rushton Mot. Partial Summ. J., Aff. of Domenico Rabuffo at 2, Aff. of Anthony Medina at 2-3.)  As a result, Rabuffo and Medina state that Rushton Development, Rushton, and Rabuffo relied on Metropolitan's verbal agreement to renegotiate the Agreement and therefore did not close the original Agreement on October 24, 2005. Further discovery is needed as to whether Metropolitan renegotiated the Agreement prior to October 24, 2005, and whether, as a result, Metropolitan is equitably estopped from claiming Rushton Development, Rushton, and Rabuffo are in breach of contract.

IT IS THEREFORE ORDERED that Rushton Development Group, LLC's Motion for Summary Judgment on Plaintiff's Complaint for Interpleader (Doc. #16) and Rushton Development, Rushton, and Rabuffo's Motion to Dismiss Cross-claim and Third-party Complaint; Memorandum of Points and Authorities in Support Thereof (Doc. #17) are hereby DENIED without prejudice.

IT IS FURTHER ORDERED that Cross-Claimant Metropolitan Land Development's Countermotion for Partial Summary Judgment (Doc. #20) is hereby DENIED without prejudice.

IT IS FURTHER ORDERED that Rushton Development Group, Glenn Rushton, and Domenic Rabuffo's Countermotion for Federal Rules of Civil Procedure 56(f) Discovery (Doc. #22) is hereby GRANTED and that the parties shall forthwith commence discovery of facts relating to the above-referenced issue of equitable estoppel, which discovery shall be completed by the parties not later than October  18, 2006.

DATE:   August 14, 2006

_____
PHILIP M. PRO
Chief United States District Judge